FRANK L. WEBSTER v. PAUL SCHWARTZ AND ANOTHER.

114 N. W. (2d) 280.

February 23, 1962—No. 38,397.

656; In re Condemnation by Dairyland Power Co-op. 248 Minn. 556, 82 N. W. (2d) 56.

64

*Sachs, Latz & Kirshbaum,* for appellant.
*Lester L. Sokol,* for respondents.

NELSON, JUSTICE.

This is an appeal from an order for judgment and from an order denying plaintiff's alternative motion for amended findings or for a new trial upon the minutes of the court but limited to two issues designated under the topics—(a) Negro Funds, and (b) Richfield Garden Tract Purchase.

The facts which appear in a scant abridgment of the testimony and minutes of the court are as follows: In 1952 Frank L. Webster, plaintiff, entered into an agreement whereby he was to search out and acquire certain lands and build houses thereon. Paul Schwartz, one of the defendants, as his part of the bargain was to arrange for the necessary financing and procuring suitable customers. This has been referred to as the Negro Fund or Negro Housing Development.

After the parties entered into this agreement, one Carl Johnson granted plaintiff an option to buy an addition known as Tonka Gardens to be used for Negro housing. Paul Schwartz bought a money order and tendered it to Johnson as part payment for the right to exercise the option. This was refused by Johnson and suit was commenced for specific performance. Johnson prevailed in that action. In December of the same year Webster and Schwartz incorporated a company known as Lincoln Park Development Corporation in order to carry through the Negro housing project. On or about May 7, 1953, $800 was paid to Jack and Lucille Radisch and Barney Realty Company for an option to purchase other property but it eventually lapsed. The $800 was paid by Schwartz from his own funds. Schwartz, acting as an agent for the venture, began taking earnest money from prospective Negro purchasers. The plan never materialized and

Schwartz saw to it that all the earnest money payments were returned to the depositors beginning in January 1954, with a final payment occurring August 1, 1954.

On July 31, 1953, this corporation was changed to the Penn Development Company and the whole of the stock issued to defendant Schwartz and his nominees.

In 1953 plaintiff and Schwartz entered into a joint venture to build and sell houses on three lots in Minneapolis. The building and sale of these houses was to be carried on in the name of Penn Development Company. Plaintiff was to furnish plans and supervise the construction of the homes, and Schwartz, through the defendant company, was to provide the necessary financing and the agency for selling the properties. The profits from the three houses, if any, would be split equally between the parties to the venture. The houses were built and sold pursuant to the foregoing agreement. No accounting between the parties is indicated by the record. Defendant Schwartz looked after and furnished all the money for the incorporation of the Penn Development Company, and either Schwartz or the Penn Realty Company, a corporation owned by Schwartz, made loans to the Penn Development Company for the financing of the three homes and other projects in which the plaintiff was not engaged. No agreement appears to have been entered into which prevented Schwartz from engaging in other transactions as he saw fit.

Subsequent to the foregoing venture, plaintiff by chance obtained from Thorpe Brothers a price for a lot in the Richfield Gardens Addition. He later recommended to Schwartz that he buy the same and that he either engage the plaintiff or some other builders in developing the lot. The trial court found that defendant Penn Development Company purchased the Richfield Gardens lot with money borrowed from either Schwartz or the Penn Realty Company. The trial court also found that this was an independent transaction and in no way involved plaintiff who contends on this appeal that this purchase was a joint venture.

■ The findings of the court so far as applicable to the present appeal are: (1) The Negro housing development was a joint venture; (2) the building and sale of the three houses was a joint venture;

(3) the Richfield Gardens lot was not a joint venture; and (4) even though the court found a joint venture in two projects, plaintiff had no standing to sue for an accounting.

Plaintiff makes the following assignments of error: (1) The trial court erred in failing to grant a full and complete accounting to the plaintiff of the use of joint venture funds and any profits arising therefrom which defendant Schwartz may have made by depositing and using funds from sales made in the Negro housing development; and (2) the trial court erred in failing to grant to plaintiff a full accounting in connection with the purchase of the Richfield Gardens lot on the grounds that this involved a joint venture.

Plaintiff in his brief admits that there is no disagreement as to the basic fact of handling and possession of all funds by Schwartz arising out of the earnest money contracts involved in the Negro housing development; that defendant Schwartz took possession of the funds and put them into his own bank account. The trial court found that since this project was never carried out but later abandoned and the money returned to the prospective purchasers plaintiff was not entitled to an accounting for any use of said funds during the interim.

An order allowing the settled case upon which this appeal is based reads in part as follows:

"It is hereby ordered that the following shall be and shall constitute, and hereby are certified as the 'settled case':

"1. The transcript (partial) of the testimony heretofore filed herein, consisting of 227 pages of testimony.

"2. The defendant's proposed 'Settled Case', consisting of 21 pages of notes as excerpted from the Minutes of the Court.

"3. All exhibits pertinent to the two issues to be appealed.

"4. All pleadings, depositions, motions and affidavits in the file pertinent to the two issues proposed for appeal.

"And the Court does hereby certify that it has examined the same and found it conformable to the truth and to contain the evidence, objections, rulings, orders and other proceedings of such trial, together with the exhibits therein referred to as may be necessary for the purposes of an appeal limited to the issues set forth in the affidavit of

Louis Sachs dated the 24th day of October, 1960, herein in support of a Motion for a 'Settled Case.' "

We note that the trial court in a memorandum attached to its order indicated as follows:

"It is with considerable reluctance that I am certifying the settled case by the foregoing order. I do not clearly understand what points the plaintiff proposes to have reviewed by the Supreme Court * * *."

Defendants contend that they cannot determine with any certainty on what grounds plaintiff has appealed.

Defendants, in objecting to plaintiff's motion for a new trial, made the following statements:

"* * * (defendants' attorney) was served a partial transcript of the proceedings at the trial of said matter; that in his opinion said partial transcript contains not more than 10% of the testimony taken; and that said partial transcript is a very biased and prejudiced statement containing the admission of all plaintiff's exhibits and only one of defendant's exhibits, containing virtually no cross-examination of plaintiff's witnesses by defendants and no direct examination of defendants, or defendants' witnesses."

We think the settled case herein, from which this court must make its determination, falls far short of the minimum required in order to do justice to the parties involved. An appeal is not a unilateral transaction devoted exclusively to the complaining party and allowing him to set forth only those portions of the record that he feels may best aid his case. This case is not properly here for review when the paper book is so incomplete as to make it clear on its face that plaintiff has bypassed Rule 59.07, Rules of Civil Procedure, and the rules of practice of this court. The stipulation for a settled case provides that 227 pages of testimony are allowed. This constitutes the transcript. The plaintiff's record on appeal contains about 50 pages of testimony although approximately 1,500 pages of testimony were taken at the trial. Plaintiff has selected only part of one witness' testimony, reducing it in part to narrative form and including no cross-examination. Little, if any, testimony is included in the record on the issues which he is

here seeking to have resolved. There are assumptions and conclusions which are not justified and of which defendants rightly complain. Also we find evidence incorporated which was offered and excluded by the court. The plaintiff does not mention that this evidence was objected to by the defendants and the objection sustained, so the inference remains that it is part of the record and properly here on appeal. We also observe that the refusal of the trial court to admit this testimony has not been assigned as error.

After a complete reading of plaintiff's record as presented and the supplemental record filed by defendants, it still remains quite impossible to satisfactorily ascertain the validity and accuracy of included testimony of the parties as related to the issues raised on this appeal. The defendants have objected—and we think the objection is timely—to the settled case as lacking that definiteness which only a complete transcript on the points at issue could provide. True, the trial court suggested certain steps that defendants might take, the most practical being for them to make up narrative testimony from the court's minutes and their own notes.

Rule 59.07, Rules of Civil Procedure, reads as follows:

"A case shall mean a written statement of the proceedings in the cause, excluding all pleadings and other papers properly filed with the clerk. It should contain only the evidence and other proceedings on the trial material to the questions of law or fact that the parties may choose to present for review. * * *"

Also see, Supreme Court Rule VIII(2), (222 Minn. xxxii).

The foregoing statement contains certain limitations which to that extent restrict its application. In settling a case which is before this court on appeal, Rule 59.07 must be interpreted to mean that the abridgment allowed must provide the appellate court with a concise statement of the proceedings including all pertinent and relevant testimony, exhibits, motions, and orders which are necessary in order that this court may properly determine the issues raised on appeal. Anything less would obviously be inadequate. See, Seerup v. Swanson, 223 Minn. 230, 26 N. W. (2d) 33; Begin v. Liederbach Bus Co. Inc. 167 Minn. 84, 208 N. W. 546; Iowa City v. Glassman, 155 Iowa

671, 136 N. W. 899, 40 L.R.A. (N.S.) 852; 1 Dunnell, Dig. (3 ed.) § 353; 4A C.J.S., Appeal and Error, §§ 989, 999, 1110.

It is always commendable for counsel to stipulate among themselves as to the necessary requirements of a settled case. Admittedly, a trial that has consumed approximately 10 days, resulting in about 1,500 pages of testimony, is a long, drawn out, and costly affair. It is recognized that much of the testimony adduced at a trial of that length is of little, if any, help for the determination of one or two issues on appeal, and abridgment of the printed record is desirable where possible. However, where portions of the testimony are omitted from the settled case, attention should be directed to such omissions by a brief explanation indicating the omissions and the reason therefor. 1 Dunnell, Dig. (3 ed.) § 353; In re Estate of Palm, 210 Minn. 77, 297 N. W. 765.

In Guthrie v. Hagen, 162 Minn. 447, 448, 203 N. W. 216, where one of the errors assigned challenged the sufficiency of the evidence and only short excerpts from the settled case appeared, the court said:

"* * * These are so meagre that we cannot take them to be all of the testimony bearing upon the amounts and values of the different items of crop appropriated by plaintiff, or upon disputed items of payments. Defendant objects to a consideration of errors thus assigned, and that justly. Plaintiff has not in substance complied with subdivision 2 of Rule IX, 120 Minn. XXIV [now Rule VIII(2), (222 Minn. xxxii)], which authorizes an abridgment in the printing of the settled case, or of its contents if reduced to a narrative form, only where the sufficiency of the evidence is not challenged. This being the rule, the attorneys should not expect this court to examine the typewritten settled case in order to pass on the sufficiency of the evidence, and we decline to do so."

Finally, in Safro v. Lakofsky, 191 Minn. 532, 537, 255 N. W. 94, 97, this court said:

"In view of the limited scope of the review permitted here, the evidence not being before us in whole or in part, it necessarily follows that we cannot, even if so disposed, give consideration to the refusal of the trial court to make the additional findings or conclusions requested.

This court 'will not review the decision of a lower court upon any question of fact unless the record contains all of the evidence introduced on the trial pertaining to such question. It is an unvarying rule that a decision, resting on conclusions drawn from the evidence, will not be reversed where such *evidence is omitted from the record.'* " (Italics supplied.)

■ We have examined the record and supplemental record, including minutes of the court, motions, exhibits, and affidavits listed in the order for a settled case, and after due deliberation we reach the conclusion that due to the insufficiency and the meagerness of the record in dealing with the two issues raised on this appeal we have no alternative but to affirm.[1]

Affirmed.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time the case was heard, took no part in the consideration or decision of this case.

---

[1]Vossen v. Thulin, 244 Minn. 351, 70 N. W. (2d) 287.